# IN THE UNITED STATES DISTRICT COURT
# IN AND FOR THE MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**CASE NO.: 6:19-cv-01379**

RONALD D. SCHERZINGER,

    Plaintiff,

vs.

HARBOR CITY VENTURES, LLC, a Nevada
Limited Liability Company, and JONATHAN
PAUL MARONEY, a/k/a JP MARONEY,
Individually,

    Defendants.

_____/

## COMPLAINT

Plaintiff, Ronald D. Scherzinger (the "Plaintiff"), by and through the undersigned counsel, hereby sues Defendant Harbor City Ventures, LLC ("Harbor City"), a Nevada limited liability company, and Jonathan Paul Maroney, also known as JP Maroney ("Maroney"), in his individual capacity (collectively, the "Defendants"), and in support, states the following:

### PARTY ALLEGATIONS

1. Plaintiff is an individual residing at 1900 Bainbridge Row, Louisville, Kentucky, 40207.

2. At all relevant times, Plaintiff is and has been a citizen of the state of Kentucky.

3. At all relevant times, Defendant Harbor City is and has been a Nevada limited liability company with a principal place of business located at 100 Rialto Place, Suite 700, Melbourne, Florida 32901.

4. At all times relevant hereto, Defendant Harbor City conducted business in Melbourne, Florida and, therefore, meets the citizenship requirement of 28 U.S.C. §1332(c).

5. At all relevant times, Defendant Maroney is and has been an individual residing in Melbourne, Florida and a citizen of Brevard County, Florida.

## ALLEGATIONS AS TO JURISDICTION AND VENUE

6. This is an action for money damages. The claim for money damages exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees. This Court is vested with original jurisdiction over this matter by virtue of 28 U.S.C. §1332(a).

7. Defendant Harbor City is subject to the personal jurisdiction of this Court because: (i) at all relevant times, Harbor City conducted its business in the state of Florida and, thus, qualified as a citizen of the state of Florida under 28 U.S.C. §1332(c); and (ii) Harbor City irrevocably consented to the personal jurisdiction of this Court in Section 7 of the 2016 Digital Marketing Arbitrage Funding Agreement (as defined below) and the 2018 Digital Marketing Arbitrage Funding Agreement (as defined below).

8. Defendant Maroney is subject to the personal jurisdiction of this Court because at all relevant times, Defendant was a citizen of Melbourne, Florida, which is located in Brevard County, Florida.

9. Venue is proper pursuant to Section 7 of the 2016 Digital Marketing Arbitrage Funding Agreement (as defined below) and the 2018 Digital Marketing Arbitrage Funding Agreement (as defined below), executed by the parties, in which both Plaintiff and Harbor City agreed that the sole and exclusive venue for any action arising out of the 2016 Digital Marketing Arbitrage Funding Agreement or the 2018 Digital Marketing Arbitrage Funding Agreement shall

be in the state or federal courts in and for Brevard County, Florida. This Court is the proper venue for federal cases occurring in Brevard County, Florida.

## ALLEGATIONS CONCERNING CONDITIONS PRECEDENT

10. All conditions precedent to the bringing of this action have been performed, excused, and/or waived.

## ALLEGATIONS COMMON TO ALL COUNTS

11. In or around March 2016, Plaintiff and Maroney began communicating about a potential investment by Plaintiff into Maroney's business, Harbor City, including (collectively, the "Communications"): (i) at least one phone call between Maroney, Harbor City, and Plaintiff that occurred on around March 18, 2016; (ii) various email communications between Maroney, Harbor City, and Plaintiff throughout the month of March 2016, both prior to and after March 28, 2016; (iii) print marketing materials, including a brochure provided to Plaintiff by Harbor City and Maroney prior to March 28, 2016.

12. As part of the Communications, Maroney and Harbor City provided Plaintiff with brazen marketing materials used to lure unwitting investors, such as Plaintiff, to invest in Harbor City, which called itself a "digital arbitrage," promising investors "double digit returns in a single digit economy," and misrepresenting itself as a "safe investment" despite such allegedly high returns.

13. In or around early March 2016, Maroney and Harbor City represented to Plaintiff that Harbor City's business consisted of the utilization of its "client facing brand Responzive.com" as a "digital arbitrage" to yield significant returns for investors from the "high-growth +$200B Internet advertising sector," when, in actuality: (i) Responzive.com appears to have been nothing more than a shell website, which, at one point listed a non-existent physical address in San

Francisco, as well as a generic contact email address (reservations@domains.com) belonging to its web-hosting company; (ii) Maroney appears to be utilizing Harbor City to employ a multi-level marketing scheme to scam investors into investing in its sham business of selling junk "leads" to small business owners, with little to no return for investors, despite written marketing materials from Harbor City promising investors the "Alternative Investment of the Decade" and "double digit returns". In actuality, besides Harbor City's deceptive and hyperbolic marketing materials, there is little to no evidence that Harbor City had any legitimate business purpose other than inducing loans which it could not repay.

14. As a direct result of the Communications, brazen misrepresentations, and deceptive marketing techniques employed by Maroney and Harbor City throughout early March 2016, on or about March 28, 2016, Plaintiff agreed to invest in Harbor City via a loan of $100,000.00 to Harbor City, which was memorialized by that certain Digital Marketing Arbitrage Funding Agreement, dated March 21, 2016 (the "2016 Digital Marketing Arbitrage Funding Agreement"), a copy of which is attached hereto as **Exhibit A**.

15. When Harbor City defaulted under the terms of the 2016 Digital Marketing Arbitrage Funding Agreement by failing to make any payments to Plaintiff when the loan matured, Harbor City again induced Plaintiff to enter into a new loan transaction with Harbor City, in the principal amount of $153,750.00, which is memorialized by that certain Digital Marketing Arbitrage Funding Agreement, dated May 14, 2018 (the "2018 Digital Marketing Arbitrage Funding Agreement"), a copy of which is attached hereto as **Exhibit B**.

## COUNT I – BREACH OF THE 2016 DIGITAL
## MARKETING ARBITRAGE FUNDING AGREEMENT
*(Against Harbor City)*

Plaintiff sues Defendant Harbor City for breach of the 2016 Digital Marketing Arbitrage Funding Agreement, and as grounds therefore asserts the following:

16. Plaintiff hereby adopts and realleges paragraphs 1 through 15, as if each were fully and independently realleged herein.

17. The opening paragraph of the 2016 Digital Marketing Arbitrage Funding Agreement states, in relevant part that:

> "On or before March 28, 2017, for value received, [Defendant Harbor City] promises to pay to the order of [Plaintiff]…the principal sum of $100,000.00."

18. On or about March 21, 2016, Plaintiff paid $100,000.00 to Defendant Harbor City by depositing a cashier's check into Harbor City's Chase bank account at Maroney's direction. A copy of the cashier's check evidencing such payment is attached hereto as **Exhibit C**.

19. On March 28, 2017, when the loan reached maturity, Harbor City failed to repay Plaintiff the principal sum of $100,000.00 as required by the opening paragraph of the 2016 Digital Marketing Arbitrage Funding Agreement. To date, Plaintiff has received no principal payment from Harbor City.

20. Paragraph 2 of the 2016 Digital Marketing Arbitrage Funding Agreement states, in relevant part that:

> "Interest of 24% [or] $24,000.00 will be payable [to Plaintiff by Harbor City] in one installment at the time the principal is due."

21.     On March 28, 2017, when the loan reached maturity, Harbor City failed to repay Plaintiff the interest due as required by Paragraph 2 of the 2016 Digital Marketing Arbitrage Funding Agreement. To date, Plaintiff has received no interest payment from Harbor City.

22.     Paragraph 4 of the 2016 Digital Marketing Arbitrage Funding Agreement states, in relevant part, that Harbor City's "failure to make any payment when due…including the final payment due under this note when fully amortized" constitutes an "[e]vent of default."

23.     Harbor City's failure to pay Plaintiff the principal and interest due, as described above, constituted a default event under the terms of the 2016 Digital Marketing Arbitrage Funding Agreement, and constituted a material breach of the 2016 Digital Marketing Arbitrage Funding Agreement.

24.     Paragraph 5 of the 2016 Digital Marketing Arbitrage Funding Agreement provides for the acceleration of all amounts due thereunder in the event of a default, including principal, interests, attorneys' fees and costs.

25.     Paragraph 6 of the 2016 Digital Marketing Arbitrage Funding Agreement provides that Harbor City has waived any right to receive notice of acceleration or notice of default.

26.     Harbor City's failure to pay Plaintiff the principal and interest due at maturity triggered the acceleration clause of the 2016 Digital Marketing Arbitrage Funding Agreement.

27.     Paragraph 14 of the 2016 Digital Marketing Arbitrage Funding Agreement states, in relevant part, that, in the event a final payout is not timely requested and realized at the maturity date:

> "… [the] note shall roll over for another 12-month term, at same rate, with principal amount consisting of previous year principal and interest due (if any) combined."

28.     Although Plaintiff timely requested a final payout under the 2016 Digital Marketing Arbitrage Funding Agreement, on or around April 10, 2017, Harbor City acknowledged its default,

6

and alleged that as a result of its default, the new principal amount due and owing to Plaintiff was $124,000.00, plus interest at the rate of 24% per year.

29. On or about May 16, 2019, Plaintiff, by and through his counsel: (i) again notified Harbor City of its default under the terms of 2016 Digital Marketing Arbitrage Funding Agreement by failing to pay the principal and interest due on the maturity date, or any date thereafter; (ii) gave Harbor City notice that the acceleration clause in Paragraph 5 of the 2016 Digital Marketing Arbitrage Funding Agreement had been triggered as a result of the default; and (iii) demanded immediate payment of all amounts due, plus attorneys' fees and costs, as provided for in Paragraph 8 of the 2016 Digital Marketing Arbitrage Funding Agreement. A copy of the demand letter is attached hereto as **Exhibit D**.

30. As a direct and proximate result of Harbor City's breach of the 2016 Digital Marketing Arbitrage Funding Agreement, Plaintiff has been damaged and is entitled to recover its compensatory damages, pre-judgment interest, and reimbursement of attorneys' fees and costs.

WHEREFORE, Plaintiff demands judgment against Harbor City for all of the above-described compensatory damages, pre-judgment interest, attorneys' fees and costs pursuant to Paragraph 8 of the 2016 Digital Marketing Arbitrage Funding Agreement, and such other and further relief as this Court deems appropriate.

### COUNT II – BREACH OF THE 2018 DIGITAL MARKETING ARBITRAGE FUNDING AGREEMENT
*(Against Harbor City)*

Plaintiff sues Harbor City for breach of the 2018 Digital Marketing Arbitrage Funding Agreement, and as grounds therefore asserts the following:

31. Plaintiff hereby adopts and realleges paragraphs 1 through 30, as if each were fully and independently realleged herein.

32. The opening paragraph of the 2018 Digital Marketing Arbitrage Funding Agreement states, in relevant part that:

> "On or before May 16, 2020, for value received, [Defendant Harbor City] promises to pay to the order of [Plaintiff]…the principal sum of $153,750.00."

33. Paragraph 2 of the 2018 Digital Marketing Arbitrage Funding Agreement states, in relevant part that:

> "Quarterly interest-only payments of 4.5% ($6,919) will be payable each quarter. First payment is due on or around July 15, 2018, with each subsequent payment due on or around the 15th day of the month following the close of the previous calendar year quarter."

34. Harbor City failed to make the quarterly interest-only payment due to Plaintiff on July 15, 2018, and all subsequent interest payments that became due thereafter, as required by Paragraph 2 of the 2018 Digital Marketing Arbitrage Funding Agreement.

35. Paragraph 4 of the 2018 Digital Marketing Arbitrage Funding Agreement states, in relevant part, that Harbor City's "failure to make any payment when due" constitutes an "[e]vent of default."

36. Harbor City's failure to pay Plaintiff any of the quarterly interest-only payments when they became due constituted a default and a material breach of the terms of 2018 Digital Marketing Arbitrage Funding Agreement.

37. Paragraph 5 of the 2018 Digital Marketing Arbitrage Funding Agreement provides for the acceleration of all amounts due thereunder in the event of a default, including principal, interests, attorneys' fees and costs.

38. Paragraph 6 of the 2018 Digital Marketing Arbitrage Funding Agreement provides that Harbor City waived any right to receive notice of acceleration or notice of default.

39. Harbor City's failure to pay any of the quarterly interest-only payments triggered the acceleration clause of the 2018 Digital Marketing Arbitrage Funding Agreement.

40. Paragraph 14 of the 2018 Digital Marketing Arbitrage Funding Agreement states, in relevant part, that, in the event a final payout is not timely requested and realized at the maturity date:

> "… [the] note shall roll over for another 2-year term, at same rate, with principal amount consisting of previous year principal and interest due (if any) combined."

41. Beginning on or around January 11, 2018, Plaintiff made numerous demands for payment of the entire principal and interest due from Harbor City under the 2016 and the 2018 Digital Marketing Arbitrage Funding Agreements as result of Harbor City's default and breach thereunder. Such demands were well within the time limit to prevent any alleged roll over of the debt into an additional 2-year term.

42. On or around May 16, 2019, Plaintiff, by and through his counsel: (i) notified Harbor City of its default under the terms of 2018 Digital Marketing Arbitrage Funding Agreement by failing to pay the principal and interest when due, or any date thereafter; (ii) gave notice that the acceleration clause in Paragraph 5 of the Agreement had been triggered as a result of the default; and (iii) demanded immediate payment of all amounts due, plus attorneys' fees and costs, as provided for in Paragraph 8 of the Agreement. A copy of the demand letter is attached hereto as **Exhibit D**.

43. As a direct and proximate result of Harbor City's breach of the 2018 Digital Marketing Arbitrage Funding Agreement, Plaintiff has been damaged and is entitled to recover its compensatory damages, pre-judgment interest, and reimbursement of attorneys' fees and costs.

WHEREFORE, Plaintiff demands judgment against Harbor City for all of the above-described compensatory damages, pre-judgment interest, attorneys' fees and costs pursuant to Paragraph 8 of the 2018 Digital Marketing Arbitrage Funding Agreement, and such other and further relief as this Court deems appropriate.

## COUNT III – FRAUD IN THE INDUCEMENT
*(Against Harbor City)*

Plaintiff sues Harbor City for fraud in the inducement, and as grounds therefore asserts the following:

44. Plaintiff hereby adopts and realleges paragraphs 1 through 44, as if each were fully and independently realleged herein.

45. At all relevant times throughout March 2016, Harbor City misrepresented the true nature of its business to Plaintiff by claiming that its business consisted of the utilization of its "client facing brand Responzive.com" as a "digital arbitrage" to yield significant returns for investors from the "high-growth +$200B Internet advertising sector," when, based on information and belief: (i) Responzive.com, was, at all relevant times, actually nothing more than a shell website, which listed a non-existent physical address in San Francisco, as well as a generic contact email address (reservations@domains.com) belonging to its web-hosting company; and (ii) Maroney appears to have been utilizing Harbor City to employ a multi-level marketing scheme to scam investors into investing in Harbor City's scheme to sell junk "leads" to small business owners, with little to no return for investors, despite written marketing materials describing Harbor City's business as a "digital arbitrage" and promising investors the "Alternative Investment of the Decade" and "double digit returns" (collectively, the "Misrepresentations"). In actuality, besides Harbor City's deceptive and hyperbolic marketing materials, there is little to no evidence that Harbor City had any legitimate business purpose other than inducing loans which it could not repay.

46. Harbor City knew, or should have known, at all times that the Misrepresentations were false.

47. Harbor City made the Misrepresentations intentionally in order to induce Plaintiff to enter into the 2016 and 2018 Digital Marketing Arbitrage Funding Agreements.

48. Plaintiff suffered injury as a result of his justifiable reliance on the Misrepresentations.

49. Harbor City's Misrepresentations and intentional actions were the proximate cause of the damages to Plaintiff.

50. Harbor City's Misrepresentations and intentional actions were independent from the acts that caused the breach of the 2016 and 2018 Digital Marketing Arbitrage Funding Agreements.

51. Harbor City's Misrepresentations and intentional actions do not involve a cause of action related to product liability.

WHEREFORE, Plaintiff demands judgment against Harbor City for all of the above-described compensatory damages, punitive damages, pre-judgment interest, attorneys' fees and costs, and such other and further relief as this Court deems appropriate.

## COUNT IV – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
*(Against Harbor City)*

Plaintiff sues Harbor City for deceptive acts and/or an unfair trade practices in violation of §§501.201, *et. seq.* of the Florida Statutes ("FDUPTA").

52. Plaintiff hereby adopts and realleges paragraphs 1 through 51, as if each were fully and independently realleged herein.

53. Plaintiff is a person, as that term is defined under FDUPTA.

54. Harbor City's brazen marketing practices were intended to induce unwitting persons, such as Plaintiff, to invest in its business, and the Misrepresentations, as that term is

defined herein, above, constitute deceptive acts and/or an unfair trade practices in violation of §§501.201, *et. seq.* of the Florida Statutes ("FDUPTA").

55. Such actions and unfair trade practices are the proximate cause of damages of Plaintiff's damages.

56. Plaintiff suffered actual damages as a result of Plaintiff's violations of FDUPTA.

57. Section 501.2105 of FDUPTA provides for the payment of the prevailing party's attorneys' fees and costs in a civil action by the non-prevailing party.

WHEREFORE, Plaintiff demands judgment against Harbor City for all of the above-described compensatory damages, pre-judgment interest, attorneys' fees and costs, and such other and further relief as this Court deems appropriate.

## COUNT V – FRAUD IN THE INDUCEMENT
*(Against Maroney)*

Plaintiff sues Maroney for fraud in the inducement, and as grounds therefore asserts the following:

58. Plaintiff hereby adopts and realleges paragraphs 1 through 56, as if each were fully and independently realleged herein.

59. At all relevant times throughout March 2016, through the Misrepresentations, Maroney misrepresented the true nature of Harbor City's business to Plaintiff.

60. Maroney knew, or should have known, at all times that the Misrepresentations were false.

61. Maroney made the Misrepresentations intentionally in order to induce Plaintiff to enter into the 2016 and 2018 Digital Marketing Arbitrage Funding Agreements.

62. Maroney suffered injury as a result of his justifiable reliance on the Misrepresentations.

63. Maroney's Misrepresentations and intentional actions were the proximate cause of the damages to Plaintiff.

64. Maroney's Misrepresentations and intentional actions were independent from the acts that caused the breach of the 2016 and 2018 Digital Marketing Arbitrage Funding Agreements.

65. Maroney's Misrepresentations and intentional actions do not involve a cause of action related to product liability.

66. Maroney's intentional actions and Misrepresentations provide a sufficient basis to pierce and set aside the corporate veil of Harbor City so that Maroney may be held personally liable for the damages he caused to Plaintiff.

WHEREFORE, Plaintiff demands judgment against Maroney for all of the above-described compensatory damages, punitive damages, pre-judgment interest, attorneys' fees and costs, and such other and further relief as this Court deems appropriate.

Dated: July 25, 2019

                        Respectfully Submitted,

                        VAKSMAN KHALFIN, PC
                        Attorneys for Ron Scherzinger

                        Telephone: (877) 780-4727
                        Facsimile: (877) 888-3799

By:   /s/ Melissa A. Youngman
       MELISSA A. YOUNGMAN
       Florida Bar No. 0690473
       721 Maitland Avenue
       Altamonte Springs, FL 32701
       Email: melissayoungman@melissayoungman.com
              myoungman@vaksman-khalfin.com

13